UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE CARRANZA,

    Plaintiff,

v.

G. D. LEWIS, et al.,

    Defendants.

Case No. 15-cv-00682-YGR (PR)

**ORDER OF PARTIAL DISMISSAL; AND SERVING COGNIZABLE CLAIMS**

## INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at Calipatria State Prison ("Calipatria"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He has also filed a motion for leave to proceed *in forma pauperis*, which will be granted in a separate written Order. Plaintiff challenges his validation as a gang member and placement in the Secure Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP"), where he was previously incarcerated. Dkt. 1. Plaintiff informs the Court that he "originally filed this complaint on March 21, 2014." *Id.* at 9.[1] The Court notes that Plaintiff is referring to the second amended complaint that he filed in his prior action, Case No. C 13-3337 YGR (PR). Dkt. 24 in Case No. C 13-3337 YGR (PR). After the Court had ordered service of the claims in his prior action (but before Defendants filed their answer), Plaintiff moved for voluntary dismissal so that he could exhaust his administrative remedies. Dkt. 30 in Case No. C 13-3337 YGR (PR). Plaintiff claimed that while he had exhausted his *prison* administrative remedies, he had failed to file a claim for damages with the California Victim Compensation and Government Claims Board ("CVCGCB"). *Id.* at 2-3.

On July 25, 2014, pursuant to Plaintiff's notice of voluntary dismissal, the Court terminated his prior action. Dkt. 31 in Case No. C 13-3337 YGR (PR) at 1. The Court noted that the dismissal was without prejudice. *Id.*

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

On September 23, 2014, Plaintiff filed a claim with the CVCGCB, which did not act on his claim within forty-five days; therefore, he claims this constitutes a denial. Dkt. 1 at 9-10 (citing Cal. Gov't Code § 912.4(c)). As mentioned above, Plaintiff has now filed a new complaint raising the same allegations that he brought in his prior action, and he has named all of the same Defendants, except Institutional Gang Investigation Sergeant A. B. Gomez. *Compare* Dkt. 1 at 5-10 to Dkt. 24 in Case No. C 13-3337 YGR (PR) at 12. The named Defendants from PBSP are as follows: Warden G. D. Lewis; Chief Deputy Warden P. T. Smith; Facility Captain K. Cruse; Sergeant R. Randow; and Licensed Clinical Social Worker V. Cappello. *Compare* Dkt. 1 at 5 to Dkt. 24 in Case No. C 13-3337 YGR (PR)) at 12. Meanwhile, the named Defendants from the California Department of Corrections and Rehabilitation ("CDCR") in Sacramento are the following: Director Matthew Cate; Appeals Examiner K. J. Allen; Inmate Appeals Branch Chiefs R. Manuel and D. Foston; Special Services Unit Special Agents B. Kinroton, D. S. McClure, Buechner, Scott S. Kissel and C. M. Rojers. *Id.*

Venue is proper because the events giving rise to Plaintiff's claims in his complaint are alleged to have occurred at PBSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b). Specifically, Plaintiff challenges his July 8, 2009 placement and resulting retention in administrative segregation in the SHU on the basis of his alleged association with the Mexican Mafia ("EME") prison gang.[2] Plaintiff denies that he is a gang associate, and alleges multiple violations of the federal and state constitutions stemming from his placement and retention in the SHU. Furthermore, Plaintiff alleges that he is serving a prison term of twenty-seven years to life with the possibility of parole. Dkt. 1 at 32. Although he is now in general population, Plaintiff claims that prison officials "continue to classify [him] as a validated Mexican mafia associate." Dkt. 2 at 1-2. Plaintiff explains that he is now on a "twelve-month observational period in [] general population," where due to his status as a gang associate, he is subjected to aggressive searches, urinalysis testing, and excessive monitoring of visitors, phone calls, and mail. *Id.* at 1.

---

[2] Plaintiff claims that he was first placed in the SHU at the California State Prison in Corcoran on July 8, 2009. Dkt. 1 at 10-12. Plaintiff remained in the SHU at Corcoran until his transfer to PBSP on January 14, 2010. *Id.* at 17. Plaintiff claims he was retained in the SHU at PBSP for five years. *Id.* at 39.

2

Also, Plaintiff emphasizes that he can be sent back to the SHU indefinitely if he is written up for a rules violation and that his gang validation renders him ineligible for parole. *Id.* at 2. Thus, Plaintiff argues that he "continues to suffer continuous harm and discipline and punishment as a result of CDCR[']s erroneous validation." *Id.* Plaintiff also objects that his "validation as an associate is based on his ethnic group as a southern Hispanic rather than actual gang activity." *Id.*

According to CDCR policy and practice, Plaintiff can only remove his gang associate status if he debriefs or provides information incriminating other prisoners. Plaintiff argues that under this policy he can never remove his status because he is unable to debrief because he is not a gang associate, and he has no inculpatory evidence to provide prison officials. Specifically, Plaintiff alleges the following claims:

(1)  a violation of his Fourteenth Amendment due process rights based upon Defendants' placement of Plaintiff in long-term administrative segregation in the SHU without a fair hearing and Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate;

(2)  a violation of his Eighth Amendment right to be free of cruel and unusual punishment based on Plaintiff's erroneous classification as a gang associate and placement in the SHU at PBSP;

(3)  a violation of his Eighth Amendment right to be free of cruel and unusual punishment based on Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate;

(4)  a violation of his Fifth Amendment due process right against self-incrimination based on Defendants' requirement that Plaintiff becomes an informant about gang activities in order to be released from the SHU;

(5)  a violation of the terms of the settlement agreement in *Castillo v. Alameida*, No. 94-2847 MJJ (PR) (N.D. Cal.), based on Defendants' placement of Plaintiff in long-term administrative segregation in the SHU on the basis of evidence that is unreliable and insufficient;

(6)  a violation of his state-created liberty interest in release from the SHU;

(7)  a violation of his Fourteenth Amendment due process right by Defendants promulgating, enforcing and implementing prison rules and regulations that are vague and overbroad;

(8)  a violation of his First Amendment right of association on the ground that Plaintiff's indefinite confinement in the SHU prevents him from associating with other prisoners;

3

(9&10) violations of various provisions of California constitutional and statutory law;

(11) a violation of his rights due to certain Defendants' failures, in their supervisory capacity, to establish lawful policies and procedures and to train their subordinate employees properly;

(12) a violation of his Eighth Amendment right to be free from cruel and unusual punishment on the ground that Defendants' requirement that Plaintiff debrief and become an informant exposes him to a substantial risk of death or serious bodily injury;

(13) a violation of his Fourteenth Amendment right to equal protection based upon Defendants' intentional discrimination against him on the basis of his racial group;

(14) a violation of his Fourteenth Amendment due process rights and state created liberty interest in denying him a meaningful review of his gang status and SHU confinement for possible release from such confinement;

(15) a violation of his Fourteenth Amendment due process rights by misinterpreting and arbitrarily applying regulations concerning gang activity and validations for association upon the Plaintiff; and

(16) a violation of his Fourteenth Amendment equal protection rights where Plaintiff has suffered and continues to suffer from Defendants utilizing a statewide systemic policy of using race as a proxy to validate inmates as gang associates and housing them in long-term administrative segregation in the SHU and denying them release from this confinement based on their "gang status."

Dkt. 1 at 50-61. Plaintiff seeks injunctive relief and monetary damages. *Id.* at 62-64.

## DISCUSSION

### I.  INJUNCTIVE RELIEF CLAIMS

As mentioned above, Plaintiff seeks both injunctive relief and monetary damages. The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions

4

from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness. *Id.*

When Plaintiff filed his prior action, he was incarcerated at PBSP. Plaintiff sought injunctive relief to remedy his alleged injuries stemming from various constitutional violations at PBSP. When Plaintiff filed the instant action, the record now shows that he has since been transferred to Calipatria. Because Plaintiff is no longer incarcerated at PBSP, his claims for injunctive relief based on his confinement at PBSP are DISMISSED as moot. The Court proceeds to review Plaintiff's remaining claims for monetary damages.

## II.   CLAIMS FOR MONETARY DAMAGES

### A.   Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §1915A(b)(1),(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.   Legal Claims[3]

#### 1. Due Process Violations and Supervisory Liability - Claims (1), (3), (6), (11), (14), (15)

##### a. Placement and Retention in the SHU

The decision to place and retain a prisoner in administrative segregation must comport with procedural due process only if the specific deprivation at play constitutes "atypical and

---

[3] Plaintiff lists sixteen causes of action. Dkt. 1 at 50-61. As indicated below, the Court has grouped together similar causes of action against Defendants under the same subheading.

5

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff's deprivation here -- a prolonged term of segregation in the SHU at PBSP -- suggests sufficient severity to implicate procedural due process protection. Assuming that this is the case, the Ninth Circuit has held that Plaintiff was entitled to the following procedures before placement in the SHU: (1) an informal non-adversary hearing within a reasonable time after being segregated, (2) notice of the charges or the reasons segregation is being considered, and (3) an opportunity to present his views. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir 1986). There also must be "some evidence" to support the decision to segregate plaintiff for administrative reasons, *id*. at 1104 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)), and the evidence relied upon must have "some indicia of reliability," *Madrid v. Gomez*, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

In view of the following, Plaintiff's allegations regarding Defendants' placement and retention of him in administrative segregation in the SHU at PBSP without a fair hearing and Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate, when liberally construed, state cognizable claims under section 1983 for a denial of due process and for supervisory liability -- claims (1), (3), (11), (14), and (15) -- against the following Defendants Lewis, Smith, Cruse, Randow, and Cappello at PBSP. Plaintiff also states the same due process and supervisory liability claims against the following Defendants Cate, Allen, Manuel, Foston, Kinroton, McClure, Buechner, Kissel and Rojers at CDCR in Sacramento. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (supervisor liability under section 1983 requires personal involvement in constitutional deprivation or sufficient causal connection between supervisor's wrongful conduct and constitutional deprivation).

### b. State-Created Liberty Interest In Parole

Plaintiff alleges in claim (6) that he has a due process state-created liberty interest in

6

1 release on parole and that this interest has been violated by Defendants' use of unreliable gang
2 labels and indeterminate SHU status to impose a blanket no parole policy on prisoners (like
3 himself).

4 While there is "no constitutional or inherent right of a convicted person to be conditionally
5 released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal &*
6 *Corr. Complex*, 442 U.S. 1, 7 (1979), a State's statutory parole scheme, if it uses mandatory
7 language, may create a presumption that parole release will be granted when or unless certain
8 designated findings are made, and thereby give rise to a constitutionally protected liberty interest.
9 *See Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987); *Greenholtz*, 442 U.S. at 11-12. In
10 such a case, a prisoner gains a legitimate expectation in parole that cannot be denied without
11 adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S.
12 at 11-16. "The liberty interest is created, not upon the grant of a parole date, but upon the
13 incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding
14 initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's
15 liberty interest). California's parole scheme, which uses mandatory language and is largely
16 parallel to the schemes found in *Allen* and *Greenholtz*, gives rise to a protected liberty interest in
17 release on parole. *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).

18 Accordingly, Plaintiff's allegations present a constitutionally cognizable due process claim
19 based on a denial of his state-created liberty interest in parole -- claim 6.

20 **2. Eighth Amendment Violations - Claims (2), (3), (12)**

21 The Eighth Amendment requires that prison officials take reasonable measures to
22 guarantee the safety of prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In
23 particular, prison officials have a duty to protect prisoners from violence at the hands of other
24 prisoners. *See id*. at 833*; Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v.*
25 *Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). A prisoner need not wait until he is actually
26 assaulted to state a claim and obtain relief. *See Farmer*, 511 U.S. at 845; *Woodhous v. Virginia*,
27 487 F.2d 889, 890 (4th Cir. 1973); *Stickney v. List*, 519 F. Supp. 617, 620 (D. Nev. 1981). If the
28 Court finds the Eighth Amendment's objective and subjective requirements satisfied, it may grant

appropriate relief. *See Farmer*, 511 U.S. at 845-46; *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

Plaintiff claims that his classification as a gang member and placement in the SHU at PBSP -- claim (2) -- as well as Defendants' alleged failure to act or investigate his claim that he is not a prison gang associate -- claim (3) -- constitute cruel and unusual punishment under the Eighth Amendment. However, it is well established that the Eighth Amendment's prohibition against cruel and unusual punishment is not violated by classification programs which pursue "important and laudable goals" and are instituted under the State's authority to operate correctional facilities. *See Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (classification program designed to treat and reduce recidivism of sex offenders is well within state's authority to operate correctional facilities and does not violate contemporary standards of decency). Nor does misclassification inflict pain so as to be cruel and unusual punishment violative of the Eighth Amendment. *See Hoptowit v. Ray*, 682 F.2d 1237, 1255-56 (9th Cir. 1982); *Ramos v. Lamm*, 639 F.2d 559, 566-67 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Accordingly, Plaintiff's Eighth Amendment claims related to his alleged erroneous classification as a gang associate and placement in the SHU at PBSP and Defendants' failure to investigate his claim that he is not a prison gang associate -- claims (2) and (3) -- are DISMISSED without prejudice.

Plaintiff also alleges -- in claim (12) -- that the debriefing policy subjected him to cruel and unusual punishment in violation of the Eighth Amendment because it required him to put himself, his families and friends at risk of physical attack in order to be released from the SHU. He further alleges that there is no CDCR policy which can effectively protect inmates who have debriefed. Allegations that a prisoner will be placed in harm's way because of confidential information made known to other prisoners may state a cognizable claim for relief. *See e.g., Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). Although Plaintiff does not allege that prison officials provide information obtained during debriefing to other prisoners, the clear implication is that prison officials know that a prisoner's release from an indeterminate SHU term will be recognized by other prisoners as a response to

debriefing, that is, snitching on other prisoners. The Court is unable to say at this time that such allegations fail to state a claim for relief. Accordingly, his Eighth Amendment claim on this ground may proceed.

### 3.   Alleged Non-Compliance With *Castillo* Settlement Agreement - Claim (5)

In claim (5), Plaintiff appears to claim that Defendants violated some provision in the settlement agreement *in Castillo v. Alameida*, N.D. Cal. No. 94-2847 MJJ (PR), or did not comply with a state court order. The settlement agreement (the existence of which the Court can take judicial notice) does not provide a basis for a section 1983 claim for relief because it is not a determination that there was any constitutional violation in the active/inactive review process and, even if it did, a settlement agreement does not provide a right secured by the Constitution or laws of the United States, the violation of which is a necessary element of a section 1983 claim. As a practical matter, the settlement agreement also does not aid Plaintiff because he was not a party to it. To the extent that Plaintiff claims that prison officials did not comply with an order from the state court, he must apply to that state court for relief in that case. A state court order does not provide a right secured by the Constitution or laws of the United States, the violation of which, as mentioned above, is a necessary element of a section 1983 claim. Accordingly, this claim is DISMISSED without prejudice.

### 4.   Fifth Amendment Violation - Claims (4) and (7)

#### a.   Right Against Self-Incrimination

Plaintiff argues in claim (4) that the debriefing requirement violates his Fifth Amendment right against self-incrimination.

The Fifth Amendment privileges an individual not to answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976). Answers implicating others which amount to a tacit admission of one's own complicity are protected by the Fifth Amendment as well. *United States v. Safirstein*, 827 F.2d 1380, 1388 (9th Cir. 1987). While the State may validly insist on answers to incriminating questions to enable it to sensibly administer its prison system, it may do so only if it recognizes that the required answers may not

9

be used in a criminal proceeding and thus eliminates the threat of incrimination. *See Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984); *see also Madison v. Lane*, 1986 WL 13205, *8 (N.D. Ill. 1986) (unless and until inmate granted use immunity he may constitutionally refuse to give testimony to prison officials). An individual may not be punished by the State for having validly invoked the privilege against self-incrimination. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

Plaintiff's allegations present a colorable Fifth Amendment claim. Such is the case insofar as Plaintiff has alleged that in order to debrief inmates must answer questions which might incriminate them in the future. There is no indication that California has erected a privilege of confidentiality for prisoner statements which would eliminate the threat of future criminal prosecution on the basis of any admissions he might make in the debriefing process. Plaintiff alleges he was punished for the valid assertion of his Fifth Amendment rights by his initial placement and eventual retention in the SHU, which could not be supported on other grounds. Accordingly, this claim is cognizable and may proceed.

### b. Regulations Vague and Overbroad

In claim (7), Plaintiff contends that Defendants enforced vague and overbroad regulations related to gang validation, i.e., Title 15 of the California Code of Regulations § 3023. Section 3023 ("gang activity") does not stand in isolation, and instead must be read in combination with section 3000 (defining "gang"), and section 3378(c)(8) (criteria for source items used for gang identification) of Title 15 of the California Code of Regulations. Read together, the regulations are not overbroad or vague with regard to prohibited gang activity. Accordingly, Plaintiff's claim is DISMISSED without prejudice.

### 5. First Amendment Violation - Claim (8)

Plaintiff alleges that he was initially placed and retained in the SHU based solely on his association with members of the EME Prison Gang. In claim (8), he argues that this amounts to a violation of his First Amendment right to association. Specifically, he argues that no legitimate penological interest is served when the mere fact of "association" is transformed into a pretext for keeping prisoners indefinitely in the SHU and denying them any realistic opportunity to parole.

The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. Const. amend. I. Prisoners retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although a prisoner does not lose all First Amendment protections when he enters prison, *id.*, the "inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates*.*" *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977). Prison regulations that infringe on a prisoner's First Amendment rights are valid so long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

At this stage of the proceedings, the Court is unable to say that holding a prisoner in the SHU for five years based solely on his associational activities with gang members, and not on illegal gang related activities, is reasonably related to legitimate penological interests. Accordingly, this claim may proceed.

### 6. State Law Violations - Claims (9), (10)

Plaintiff alleges that Defendants' actions relating to his placement and retention in administrative segregation in the SHU in violation of his federal due process rights also violates various provisions of California constitutional and statutory law. The federal supplemental jurisdiction statute provides that "'district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 28 U.S.C. § 1367(a).

Plaintiff asserts supplementary state law claims that the actions of Defendants violated the due process rights afforded to him by California constitutional and statutory law. Liberally construed, Plaintiff's allegations satisfy the statutory requirement. Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims - claims (9) and (10).

### 7. Equal Protection Violations - Claims (13) and (16)

Plaintiff alleges that he is treated differently from similarly situated inmates solely because

11

of his race. It seems that in claims (13) and (16) Plaintiff is claiming that Hispanic inmates are more likely to be validated as gang members, more likely to be held in the SHU, and more likely to denied release from the SHU on account of their race.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race.*"* *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination, which is unconstitutional outside prisons, is unconstitutional within prisons, save for the necessities of prison security and discipline. *Cruz v. Beto*, 405 U.S. 319, 321 (1972); *Johnson v. California*, 207 F.3d 650, 655 (9th Cir. 2000). The discriminatory policy or practice will pass constitutional muster only if "reasonably related to legitimate penological interests." *See Johnson v. California*, 321 F.3d 791, 799-807 (9th Cir. 2003).

Plaintiff's allegations present constitutionally cognizable equal protection claims.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's claims for injunctive relief based on his confinement at PBSP are DISMISSED as moot.

2. Plaintiff's allegations regarding placement and retention in administrative segregation in the SHU at PBSP when liberally construed, state cognizable claims under section 1983 for a denial of due process and for supervisory liability -- claims (1), (3), (11), (14), and (15) -- against the aforementioned PBSP and CDCR Defendants (hereinafter "Defendants").

3. Plaintiff's allegations present a constitutionally cognizable due process claim -- claim (6) -- based on a denial of his state-created liberty interest in parole.

4. Plaintiff's Eighth Amendment claims related to his alleged erroneous classification as a gang associate and placement in the SHU at PBSP and Defendants' failure to investigate his claim that he is not a prison gang associate -- claims (2) and (3) -- are DISMISSED WITHOUT PREJUDICE.

5. Plaintiff states a cognizable Eighth Amendment claim -- claim (12) -- that the debriefing policy subjects him to cruel and unusual punishment in violation of the Eighth

1 Amendment because it requires him to put himself, his families and friends at risk of physical

2 attack in order to be released from the SHU.

3      6.    Plaintiff's claim (5), which states that Defendants violated some provision in the

4 settlement agreement in *Castillo v. Alameida*, N.D. Cal. No. 94-2847 MJJ (PR), is DISMISSED

5 WITHOUT PREJUDICE.

6      7.    Plaintiff states a cognizable claim that the debriefing requirement violates his Fifth

7 Amendment right against self-incrimination - claim (4).

8      8.    Plaintiff's claim (7), in which he contends that Defendants enforced vague and

9 overbroad regulations (related to gang validation) is DISMISSED WITHOUT PREJUDICE.

10      9.    Plaintiff states a cognizable claim of a violation of his First Amendment right to

11 association based on his allegation that he was placed and retained in the SHU based solely on his

12 association with members of the EME Prison Gang - claim (8).

13      10.    The Court will exercise supplemental jurisdiction over Plaintiff's state law claims -

14 claims (9) and (10).

15      11.    Plaintiff's allegations present constitutionally cognizable equal protection claims -

16 claims (13) and (16).

17      12.    The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of

18 Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint

19 and all attachments thereto, including Plaintiff's declaration (dkts. 1, 2) and a copy of this Order

20 to: (1) the following persons at PBSP: **Former Warden G. D. Lewis; Chief Deputy Warden P.**

21 **T. Smith; Facility Captain K. Cruse; Sergeant R. Randow; and Licensed Clinical Social**

22 **Worker V. Cappello**; and (2) the following persons at CDCR in Sacramento**: Director Matthew**

23 **Cate; Appeals Examiner K. J. Allen; Inmate Appeals Branch Chiefs R. Manuel and D.**

24 **Foston; Special Services Unit Special Agents B. Kinroton, D. S. McClure, Buechner, Scott S.**

25 **Kissel and C. M. Rojers**.  The Clerk shall also mail a copy of the complaint and a copy of this

26 Order to the California State Attorney General's Office.  Additionally, the Clerk shall mail a copy

27 of this Order to Plaintiff.

28      13.    Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure

requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

      14.      Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

      a.      No later than **sixty (60) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[4] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in Rand must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under the new law of the circuit, in the rare event that a failure to

---

[4] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

14

exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56. *Id*. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id*. at 1168.

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

        b.        Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

        c.        Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and

documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that -- in the rare event that Defendants argue that the failure to exhaust is clear on the face of the complaint -- a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

    d.    Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

    e.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

15.    Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

16. All communications by Plaintiff with the Court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

17. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

18. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

Dated: July 20, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge